# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF KENTUCKY (at Covington)

| | | |
|---|---|---|
| **CARRIE COX AND GUY MEADE** | : | Case No.: _____ |
| c/o Christopher Wiest | | |
| 25 Town Center Blvd, STE 104 | : | |
| Crestview Hills, KY 41017 | | |
| | : | |
| **Plaintiffs** | | |
| | : | |
| v. | | |
| | : | |
| **ANTHONY TODD RUCKEL** | | |
| 441 Front Street | : | |
| Vanceburg, KY 41179 | | |
| In his Individual and Official Capacities | : | |
| | | |
| and | : | |
| | | |
| **TERRI THOMAS** | : | |
| 302 Clearview Lane | | |
| Tollesboro, KY 41189 | : | |
| | | |
| and | : | |
| | | |
| **JONATHAN SHANE WALLINGFORD** | : | |
| 85 Saint Andrews Place | | |
| Tollesboro, KY 41189 | : | |
| | | |
| and | : | |
| | | |
| **DIANNA AND RUSSELL MALONE** | : | |
| 94 Oak Hill Road | | |
| Vanceburg, KY 41179 | : | |
| | | |
| and | : | |
| | | |
| **AMY KENNEDY** | : | |
| 4206 E KY 8 | | |
| Vanceburg, KY 41179 | : | |
| | | |
| and | : | |
| | | |
| **JOHN DOES 1-10** | : | |
| | | |
| **Defendants** | : | |

1

# PLAINTIFFS' VERIFIED COMPLAINT WITH JURY DEMAND ENDORSED HEREON

Plaintiffs Carrie Cox ("Carrie") and Guy Meade ("Guy") (collectively "Plaintiffs"), for their Verified Complaint, state and allege as follows:

## INTRODUCTION

1. This action involves First Amendment retaliation, and a conspiracy to engage in First Amendment retaliation.

## PARTIES

2. Plaintiffs Carrie Cox and Guy Meade are a married couple who reside and own property at 4771 Cabin Creek Road, Vanceburg, KY 41179.

3. Anthony Todd Ruckel is the duly elected Lewis County Judge/Executive. He is sued in his individual and official capacities. Plaintiffs seek only prospective declaratory and injunctive relief for their official capacity claims. He resides at 441 Front Street, Vanceburg, KY 41179.

4. Terri Thomas is a duly elected Lewis County Magistrate. She is sued in his individual and official capacities. Plaintiffs seek only prospective declaratory and injunctive relief for their official capacity claims. She resides at 302 Clearview Lane, Tollesboro, KY 41189.

5. Shane Wallingford is a resident of Lewis County, Kentucky. He resides at 85 Saint Andrews Place, Tollesboro, KY 41189.

6. Dianna and Russell Malone are residents of Lewis County, Kentucky, who reside at 94 Oak Hill Road, Vanceburg, KY 41179.

7. Amy Kennedy is a resident of Lewis County, Kentucky, who resides at 4206 E KY 8, Vanceburg, KY 41179. She is employed by the Buffalo Trace Area Development District,

which is a government instrumentality. She is sued in her individual and official capacities. Plaintiffs seek only prospective declaratory and injunctive relief for their official capacity claims.

8. John Does 1-10 are the co-conspirators of the other Defendants and/or those who could have prevented the civil rights violations complained of, but negligently failed to do so.

## JURISDICTION AND VENUE

9. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

10. Venue in this District and division is proper pursuant to 28 U.S.C. §1391 and other applicable law, because much of the deprivations of Plaintiffs' Constitutional Rights occurred in counties within this District within Kentucky, and future deprivations of their Constitutional Rights are threatened and likely to occur in this District.

## FACTS COMMON TO ALL CLAIMS

11. On or about May 30, 2017, Plaintiffs purchased certain real property in Lewis County, Kentucky, located at 4771 Cabin Creek Road, Vanceburg, KY 41179 ("Cox Property").

12. Among other things, the Cox Property is located next to an historic, covered bridge.

13. Certain groups of people in Lewis County have viewed that historic, covered bridge as part of the county's heritage, and believe that the bridge, and all the property surrounding it (including the private property purchased by Guy and Carrie), should be set aside for public use.

3

14. As a consequence of this, trespassing onto the Cox Property by certain groups was and remains a common occurrence. Dianna Malone and her husband Russell Malone have engaged in this trespassing.

15. At times, Carrie and/or Guy would call 911 in an attempt to obtain police assistance in removing trespassers from their property. A response was not always forthcoming, in part, due to manning issues within the Lewis County Sheriff's office.

16. One of the measures put in place by Lewis County to deal with these issues was the installation of a light and camera at the bridge.

17. By way of background, the Cox Property, in fact, had an almost 200-year history, but had fallen into disrepair and blight. A photo of the house, at the time of Carrie and Guy's purchase is set forth below:



18. In late 2017, and continuing through 2018 and part of 2019, Carrie and Guy began an expensive, thorough and loving restoration of the Cox Property. At the end of that process, it looked as depicted in the image below:



19. Approximately a week prior to the October 14, 2019 Fiscal Court meeting, Carrie Cox spoke with Lewis County Judge/Executive, Todd Ruckel, about her intention to address the lack of Sheriff response to her 911 calls, and to request additional funding for the Sheriff's Department. He informed her that he did not plan to give or spend much time on those issues at that meeting.

20. On October 14, 2019, both Carrie and Guy spoke at the Lewis County Fiscal Court meeting. A large group was also planning to attend that meeting with the narrative to "put a stop to that woman trying to control the bridge," and to "save the bridge", where their solution was to have the camera and the light removed.[1]

21. The morning of the Fiscal Court meeting, another Lewis County resident, Billy Lanthorn showed up at the Cox Property to fish there without permission. He indicated that he would not stop trespassing unless the Fiscal Court told him to stop. He seemed confident the Fiscal

---

[1] One has to wonder what law-abiding citizen would want cameras and lights removed from a historic landmark.

    Court would not do so. He told Carrie and Guy that they should just pack up and leave, because they would never have peace.

22. A TV camera crew also was in attendance and was recording the October 14, 2019 fiscal court meeting ("the Meeting").

23. At the Meeting, Carrie passed out packets outlining some of the harassment she had been subjected to.

24. The Lewis County Sheriff claimed to not have the resources to help Carrie and Guy. Someone else remarked that the county cared more about spending money on roads than on deputies.

25. Carrie repeatedly complained about the misuse of county resources expended for private property, pointed out to Judge/Executive Ruckel that this was not legal, and Carrie questioned why it was the case that resources could not be provided to the Sheriff's office.

26. At the Meeting, Guy stated that he knew the property he owned and referenced the deed. The sheriff had his men downstairs as people walked out the door handed out copies of the Property Value Administrator map of the Cox Property and what the Plaintiffs paid taxes on.

27. Public participation at public meetings including, among other things, the speech and activities of Carrie and Guy at the Meeting, are protected speech, and, further, such rights were clearly established on the date of the Meeting. *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018) (public speech at government meetings is protected speech, which cannot be retaliated against).

28. The public accusation of illegal/criminal activity committed by Judge/Executive Ruckel, which was true,[2] infuriated Mr. Ruckel, and his allies and associates.[3]

29. One of Judge/Executive Ruckel's supporters and friends, Shane Wallingford, was also infuriated by this speech, and he was in attendance at the meeting in question.

30. Following this meeting, Ruckel, Wallingford, and the remaining Defendants, including John Does 1-10, then conspired to illegally retaliate against Carrie and Guy for their protected speech at the Meeting.

31. In furtherance of the conspiracy to retaliate, a mere four days after the Meeting, October 18, 2019, Ruckel, on behalf of the county, signed an easement with the neighbor to the Cox Property, Melvin Hughes, purportedly allowing access to the disputed property that was discussed at the Meeting.

32. On October 21, 2019, Ruckel continued his retaliation and, among other things, sent a text massage to Carrie that said: "Good Morning, wanted to let you know that my entire week last week after Fiscal Court has been filled with this covered bridge issue, numerous calls, text, messages. I immediately, after court, started gathering info. I actually have the survey of the property of the bridge and all the property around it. It looks like your property goes to the middle of the creek. The other side is owned by state of Kentucky and Melvin Hughes. The county has an easement on Hughes' property. I have a little time this morning before meetings if you want to talk. I have copies of all this paperwork if you want it. Lewis County

---

[2] Even if Carrie were mistaken in her beliefs, *Lozman*, 138 S. Ct. 1945, nevertheless protects the speech.
[3] In point of fact, the use of public resources on private property has been the source of federal criminal indictments of Kentucky public officials. *United States v. Thompson*, 501 Fed. Appx. 347 (6th Cir. 2012).

Herald has all this info also and it will be in the paper this week. I just want the facts out there and people will now know."

33. In fact, the property line extends far past the point that Ruckel claimed but, in the days, weeks, and months that followed, he continued his retaliation by, among other things, attempting to seize and lay claim to the land in front of Carrie's home, so that groups of people, including Dianna and Russell Malone, could harass Carrie and Guy and trespass on the Cox Property.

34. Carrie called Ruckel back that day and, in that call, Ruckel indicated that he spoke with Dianna Malone and told her the newspaper article is coming. Ruckel also informed Carrie that if she disputes what is being said in the article the County would lay claim to, and would open the road in front of her house, allowing the Malones and other harassers to have access to her home, so she should just keep her mouth shut. Ruckel informed her that he controls everything that goes into the newspaper and that he would get a copy to read before it came out.

35. The Lewis County Herald then printed an article, fed to them by Ruckel, and in furtherance of his retaliation against Carrie and Guy, claiming that Carrie and Guy owned far less property than they actually owned.

36. Shane Wallingford also published an op-ed in the Lewis County Herald, praising Ruckel and casting aspersions on Carrie and Guy, which was done in furtherance of the conspiracy to retaliate against Carrie and Guy for their protected speech at the Meeting. Wallingford did so with the requisite conspiratorial purpose.

37. Ruckel was not done. In the months following the Meeting, he conspired with others to retaliate and harass Carrie and Guy.

38. In the meantime, Ruckel began working with Amy Kennedy, of the Buffalo Trace Area Development District, to attempt to weaponize the Commonwealth of Kentucky and its agencies against Cox and Meade.

39. Kennedy sent multiple emails to the Commonwealth of Kentucky Tourism, Arts, and Heritage Cabinet, in an effort to cajole that Cabinet into attempting to seize the road, that had long since been abandoned since the 1980s, and to open it for public use to feed the harassment. Kennedy did so, with the permission and at the behest of Ruckel.

40. In addition, Kennedy undertook other efforts to harass Cox and Meade, including, without limitation, having and arranging for contractors to work on the bridge who undertook personal harassment (and in one case the assault) of Ms. Cox.

41. Among other people that worked with Ruckel to harass Cox and Meade included Dianna and Russel Malone.

42. Lewis County Magistrate Terri Thomas was also involved in this conspiracy to retaliate. She published various statements in support of Ruckel, and which harassed and threatened Carrie and Guy. Among other statements she made, she told Marty Voier that "the Malones are going to burn [Carrie and Guy's] house down."

43. On November 11, 2019, one of Carrie's cats was shot by harassers in furtherance of the conspiracy.

44. On November 12, 2019 the Malones showed up at a meeting of the Fiscal Court. Later, they followed Carrie home, and then had a number of harassers drive passed Carrie's car and yell profanities. This escalated to drive-by profanity yelling during all hours of the day, as an almost every day occurrence.

45. Further criminal harassment followed, including late night harassment, multiple times a week.  The criminal harassment also included repeated yelling, threats, trespassing, as mentioned above, an animal being shot, shooting at Carrie and Guy and their house, where minor children resided, threats to burn down Cox and Guy's house, profanity, online harassment and, in addition to criminal harassment, included other forms of retaliation that are far too numerous to recount in a reasonable number of pages, but have been logged and documented by the Plaintiffs.

46. Law enforcement was unable to fully prosecute these individuals, in part, because Ruckel refused to provide access to the camera footage from the covered bridge, which was simply part of his continuing harassment and retaliation.

47. Ultimately, Dianna Malone was criminally charged on or about June 14, 2020.

48. In August, 2020, the day before she was set to take a plea agreement that, among other things, would require her to stay away from Carrie and Guy, Ruckel called Dianna Malone into his office and told her not to take the deal.  He informed her that the County was going to file a civil lawsuit to take part of the Cox Property in order to enable the harassers to more easily harass Carrie and Guy.

49. Then, the Lewis County Fiscal Court, at the behest of Ruckel and Terri Thomas, brought a meritless lawsuit in an attempt to claim portions of the Cox Property.

50. Collectively, all of this adverse action and retaliation would deter a person of ordinary firmness from continuing to engage in protected conduct and speech.

State Action and Actions under Color of Law

51. Plaintiffs are citizens of the United States.

52. Plaintiffs have clearly established rights and protections under the First and Fourteenth Amendments to the United States Constitution.

53. Defendants Ruckel, Kennedy, and Thomas, and possibly certain of the John Doe Defendants, using their offices and acting under color of state law for all of their respective actions and incidents set forth herein, violated Plaintiffs' clearly established First Amendment Rights, which has deprived, are depriving, and will deprive them of their rights to be free to Petition and to engage in Free Speech, protected under the First Amendment. Defendants Ruckel, Kennedy, and Thomas, and possibly certain of the John Doe Defendants, thereby subjected themselves under 42 U.S.C. § 1983, to prospective injunctive relief, and to declaratory relief under 28 U.S.C. §§ 2201, *et seq*., and in their individual capacities only subjected themselves to be liable for monetary damages sought herein.

54. Defendants Ruckel, Kennedy, and Thomas, and possibly certain of the John Doe Defendants, abused the authority of their offices and, while acting under color of law and with knowledge of Plaintiffs' clearly established rights, used their offices to violate Plaintiffs' First Amendment rights.

**COUNT I – 42 USC 1983 – First Amendment Retaliation (Ruckel, Kennedy and Thomas and possibly certain of the John Doe Defendants)**

55. Plaintiffs' reincorporate the preceding paragraphs as if fully written herein.

56. Plaintiffs engaged in protected speech at the October 14, 2019 Fiscal Court Meeting. See, also, *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018).

57. Various adverse actions have been taken against them since, as set forth herein, which would deter a person of ordinary firmness from continuing to engage in such protected conduct and speech.

58. These adverse actions were motivated at least in part by the Plaintiff's protected conduct.

59. This violated clearly established case law as set forth in *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (*citing Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

60. As such, Plaintiffs seek damages against Defendants Ruckel, Kennedy, and Thomas, and possibly certain of the John Doe Defendants, in an amount to be determined at trial under 42 U.S.C. § 1983, for violations of their clearly established constitutional rights as set forth herein.  The measure of such damages shall be proven at trial, but is in excess of $100,000.00, exclusive of interest and costs.

61. Plaintiffs further seek punitive damages against Defendants since the actions complained of were motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiffs.  Plaintiffs demands judgment on these punitive damages against Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $100,000.00, exclusive of interest and costs.

**COUNT II – 42 USC 1983,– Conspiracy to Violate Civil Rights (all Defendants)**

62. Plaintiffs' reincorporate the preceding paragraphs as if fully written herein.

63. In relation the foregoing retaliation and conspiracy to retaliate: (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) numerous overt acts were committed in furtherance of the conspiracy that caused the injury.

64. The private actors willfully participated in a conspiracy with the state actors, rendering them liable.

65. Furthermore, pursuant to 42 USC 1983, the aforementioned Defendants conducted acts in furtherance of the object of the conspiracy, injuring Carrie and Guy in their person and

property, and depriving them, and discouraging them, from having and exercising certain rights or privileges of a citizen of the United States.

66. The measure of the damages caused by this conspiracy to violate their rights shall be proven at trial, and is in excess of $100,000.00, exclusive of interest and costs.

67. Plaintiffs further seek punitive damages against Defendants since the actions complained of were motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiffs.  Plaintiffs demand judgment on their punitive damage claims against Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $100,000.00, exclusive of interest and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Carrie Cox and Guy Meade demand judgment against Defendants as prayed for, including:

A. That this Court issue a declaration that the practices complained of herein, by Defendants, were and are unconstitutional, and an injunction preventing further retaliation;

B. That Plaintiffs be awarded money damages, including both compensatory and punitive damages against the individual capacity Defendants in an amount to be proven at trial, and exceeding $200,000.00, exclusive of interest and costs;

C. That trial by jury be had on all issues so triable;

D. That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

E. Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/ Thomas B. Bruns_____
Thomas B. Bruns (KBA #84985)
Bruns, Connell, Vollmar & Armstrong, LLC
4750 Ashwood Drive, Suite 200
Cincinnati, OH 45241
(513) 312-9890
(513) 800-1263 (fax)
tbruns@bcvalaw.com

**Attorneys for Plaintiff**

## JURY DEMAND

Pursuant to FRCP 38 and other applicable law, Plaintiffs demands trial by jury on all causes so triable.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)

VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Carrie Cox, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on 10/01/2020.

*Carrie Cox*
Carrie Cox